## Commonwealth v. Drennan, Appellant.

*Criminal law—Manslaughter—Voluntary or involuntary—Question for jury.*

Upon the trial of an indictment wherein there are but two counts, one charging voluntary and the other involuntary manslaughter, where no denial is made that under the evidence a verdict of murder, in either degree, or a verdict of voluntary manslaughter might be sustained, it having been admitted that the death resulted from a shot intentionally fired by defendant, it was for the jury to say whether the homicide was voluntary manslaughter, involuntary manslaughter, or an excusable killing.   It would have been palpable error for the court to withdraw the case from the consideration of the jury.

When a man intentionally discharges a pistol and the shot causes the death of another, he is not necessarily guilty of either murder or voluntary manslaughter.

286, (1923).] Statement of Facts—Opinion of the Court.

Argued October 13, 1922.   Appeal, No. 197, Oct. T., 1922, by defendant, from judgment of Q. S. Phila. Co., June T., 1921, No. 333, on verdict of guilty in the case of Commonwealth of Pennsylvania v. William Drennan. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Indictment for manslaughter.   Before AUDENRIED, P. J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were refusal of binding instructions and the sentence and judgment of the court, quoting it.

*H. Eugene Heine,* for appellant.—There is no evidence in the case from which the jury could be allowed to find defendant guilty of involuntary manslaughter because the defendant admitted an intention to fire the shot: Com. v. Rhoads, 23 Pa. Superior Ct. 512; Com. v. Bilderback, 2 Parsons 447; Com. v. Silcox, 161 Pa. 485; Com. v. Greevy, 75 Pa. Superior Ct. 116.

*Charles Edwin Fox,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY PORTER, J., March 2, 1923:

The defendant was tried in the court below upon an indictment containing two counts, the first charging voluntary manslaughter and the second involuntary manslaughter.   The jury rendered a verdict of guilty of involuntary manslaughter, and the court imposed a sentence for that offense authorized by the statute.   The defendant appeals from that judgment.

Upon the conclusion of the testimony the learned counsel representing the defendant moved the court "to

take from the consideration of the jury the first and second counts of this bill of indictment"; which motion the court refused and granted an exception to the defendant. This ruling is the subject of the first assignment of error. There were but two counts in the indictment and the motion was, in substance, a request for binding instructions. The motion was properly refused. The evidence certainly warranted a finding that Joyce, the deceased, had been killed by a shot from a revolver fired by this defendant, and the only question was whether the homicide was voluntary manslaughter, involuntary manslaughter, or an excusable killing. The learned counsel for the appellant frankly concedes in his brief that the death resulted from a shot intentionionally fired by the defendant, "No denial is made that under the evidence a verdict of murder in either degree, or a verdict of voluntary manslaughter might be sustained, but the evidence conclusively rebuts the presence in the shooting, of that lack of volition and intention which must necessarily be shown in order to sustain a verdict of involuntary manslaughter." This being so, it would have been palpable error for the court to withdraw the case from the consideration of the jury. The first assignment of error is overruled.

The only other error properly assigned is the action of the court in sentencing the defendant to the term of imprisonment authorized by the statute in case of conviction of the offense of involuntary manslaughter. The argument is that the defendant ought under the evidence to have been convicted of voluntary manslaughter or acquitted. The learned counsel for the appellant has in his brief cited many decisions in other jurisdictions defining the difference between voluntary and involuntary manslaughter. In many of those cases the expression is used that killing under certain circumstances is not involuntary manslaughter. It is, however, important to observe that in all of those cases the defendant was seeking to escape the consequences of a conviction of

voluntary manslaughter by contending that under the evidence in his case the verdict ought to have been involuntary manslaughter. All that those decisions, therefore, practically hold is that the court could not declare as matter of law that the offense was merely involuntary manslaughter, and that a conviction of voluntary manslaughter could not be sustained under the evidence. In many of the states of the union, homicide has by stat-· ute been divided into different grades or degrees and there is no uniformity in the provisions of such statutes. There were no degrees of manslaughter at common law, so far as the punishment was concerned, whether voluntary, upon sudden heat, or involuntary, in the commission of an unlawful act, either was a felony. Upon an indictment for murder the jury might find a verdict of "guilty of manslaughter." In Pennsylvania the act of assembly "for the better preventing of crimes," etc., passed April 22, 1794, established four different grades of homicide; murder of the first degree, murder of the second degree, voluntary manslaughter and involuntary manslaughter. Voluntary manslaughter remained a felony, but involuntary manslaughter was converted into a misdemeanor, and made punishable accordingly: Com. v. Gable, 7 S. & R. 424. The eighth section of that statute provided that: "Whenever any person shall be charged with involuntary manslaughter, happening in consequence of an unlawful act, it shall and may be lawful for the attorney-general, . . . . . with the leave of the court, to waive the felony, and to proceed against and charge such person with a misdemeanor, and to give in evidence any act or acts of manslaughter; and such person or persons, on conviction, shall be fined or imprisoned, as in cases of misdemeanor; or the said attorney-general, . . . . . . may charge both offenses in the same indictment, in which case the jury may acquit the party of the one, and find him or her guilty of the other charge." The provisions of this section were substantially reënacted in section 79 of the Act of March 31, 1860, P. L. 403.

The indictment in the present case was drawn in the form expressly authorized by the statute, and charged in one count the offense of voluntary manslaughter and in the second count that of involuntary manslaughter. Under the provisions of the statute it was the province of the jury, upon consideration of all the evidence and the inferences therefrom properly drawn, to determine whether the defendant was guilty of either of the offenses. When a man intentionally discharges a pistol and the shot causes the death of another, he is not necessarily guilty of either murder or voluntary manslaughter. If he intentionally aims it at the person of another, the shot is naturally to be expected to produce great bodily harm, and, unless excusable under the circumstances, is guilty of murder or voluntary manslaughter; and so if the shot is fired in a crowd or under circumstances where injury to another is reasonably probable. Involuntary manslaughter is where it appears that neither death nor any great bodily harm was intended, but death is unintentionally caused by some unlawful act, not felonious, or an act not strictly unlawful in itself, but done in an unlawful manner and without due caution. When a person doing an unlawful act or even a lawful act in an unlawful manner, without intending to injure any person, happens to kill he may, in some circumstances, be guilty of murder, in others of involuntary manslaughter, and in still others he may be excusable.

This defendant testified in his own behalf and, so far from admitting that he had intended to kill or wound Joyce, he asserted that he had not aimed at Joyce. The court could not, under the testimony have instructed the jury that they must either find the defendant guilty of voluntary manslaughter or acquit him. Had the court so charged and the result had been a conviction of this defendant of voluntary manslaughter he would undoubtedly have complained of such instruction. It was for the jury, under the evidence, to determine whether

the killing was felonious or only unlawful. The verdict settles the question that the homicide was not excusable, the defendant, therefore, ought to have been convicted of either voluntary or involuntary manslaughter, under the terms of the indictment. The finding of the jury means that the defendant unlawfully killed Joyce, but without intending to do him great bodily harm. It being for the jury to determine the degree of the killing of the defendant, the fact that it took a charitable view of the eidence does not entitle the defendant to a reversal of the judgment. The assignments of error are overruled.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.